Call the first case. Case number 1641-03 and 1641-55. United States of America v. Darrell Moore. Oral argument not to exceed 15 minutes per side. Ms. Darden for the appellate. Good morning, your honors. May it please the court, Marissa Darden on behalf of the United States. I forgot to mention that for appellant's counsel, if you have reserved rebuttal time or if you haven't but wish you had, please let us know at the outset of your arguments. Yes, your honor, I informed the clerk that I'm reserving three minutes of my time for rebuttal, please. You may proceed. Thank you, your honor. This court should vacate Moore's sentence and remand the case to the district court with instructions to sentence Moore as an armed career criminal for three reasons. First, this court has already decided that Ohio's aggravated robbery statute under Ohio revised code section 2911.01A1 is a predicate offense for purposes of the ACCA in United States v. Patterson. Second, Moore's conviction for aggravated assault under Ohio revised code section 2903.12A1 is also a predicate pursuant to United States v. Anderson and more recently confirmed by this court in Williams v. United States. Therefore, unless the court has any specific questions on those issues, I will focus my remaining time on discussing the third issue, namely why Ohio's robbery statute under Ohio revised code section 2911.02A2 is also a crime of violence and a violent felony for purposes of the ACCA and the United States sentencing guidelines. What would that do as to his guideline range? Yes, your honor. Under United States v. Patterson and Anderson, the district court erred in finding him to be a base offense level of a 20. The government believes that he should at a minimum be sent back down and resentenced and found to be a base offense level of a 24 since at a minimum the aggravated robbery statute and the aggravated assault statute has already been found to be predicate offenses for purposes of the sentencing guidelines. But obviously the United States believes that robbery would also be a third qualifying predicate, which wouldn't affect the base offense level. Go ahead. Well, there are several reasons why robbery should qualify as a predicate offense. First reason being that this circuit has decided in an unreported decision in United States v. Finley that A2 robbery is a predicate for career offender purposes under the force clause. That was supported by Patterson's decision as well because Patterson cited Finley and also they determined that the act of inflicting, attempting to inflict, or threatening to inflict physical pain or injury to another person is sufficient for us to satisfy the requirements under Johnson 1, the 2010 case. This court has also held in Mitchell that Tennessee's robbery statute is a violent felony and Ohio's robbery statute is actually more precise in its physical harm language than that of the robbery section discussed in Mitchell under Tennessee's law. Third, the A2 robbery in Ohio is distinct from A3 robbery as analyzed in United States v. Yates, the Sixth Circuit Court decision, because the A2 robbery is actually a heightened requirement than the A3 robbery and requires an offender to use force sufficient to inflict or threaten physical harm, which is higher than the use of force as described under the A3 Ohio statute. And finally, your honors, the cases cited by Moore in his brief or his initial brief that discuss robbery's physical harm definition under Ohio law is overly broad and not persuasive in this matter. And the other circuits' cases cited by Moore are not persuasive because many of them examine statutes from other states with language akin to the A3 Ohio robbery and not A2. I can focus very briefly and use my remaining time just elaborating on a few of those points. Specifically, your honors, the Patterson and Finley decision I think are most instructive in this matter because the A2 robbery has already been found by this circuit to be a violent felony under the Elements Clause. As I stated, obviously the Finley decision, though unreported, is instructional guidance because it specifically held that the language of A2 meets the requirements under the Force Clause of the United States Sentencing Guidelines. But perhaps also instructive is the dicta in Patterson which discusses the lesser included A2 robbery of the A1 aggravated robbery. The court explained that anyone committing aggravated robbery necessarily commits the lesser included A2 robbery which requires the proof that the defendant inflicted or attempted to inflict or threatened to inflict physical harm. And in fact, the Patterson court found that one could not commit the A1 aggravated robbery without also committing the A2 robbery since the use, display, or brandishing of a weapon necessarily encompasses the language of inflicting or threatening to inflict physical harm. And that's consistent with Ohio's interpretation of both laws under State v. Evans in the Ohio Supreme Court. I've talked a little bit about Mitchell. I will skip to discussing the cases that Mr. Morris cites in his brief. The examples that he cites from the state law are not persuasive to this court for a couple of reasons. One, the examples are generally not specific to A2 robbery. I believe there was only one or two cases out of the several that he cited that were specific only to the A2 robbery in juvenile matters. The other matters only assess whether specific facts satisfy other statutes used to determine physical harm which isn't necessarily instructive to this court as it's specific to A2 robbery. Also, Moncrief tells us that we can look at the minimum conduct criminalized by a statute, but it's not an invitation to go outside the statute and look at all fancies of flight or other hypothetical situations. Could I ask a clarifying question? Yes, sir. Pardon me. You know there's this en banc possibility at least in Williams' case. I do, Judge. Just speaking purely hypothetically, no decision has been made in that case with respect to en banc. If Anderson were to be overruled and the provision that issue in that case found to be not a predicate, what would be our course at that particular point in time? Then we would have to do what? Your Honor, obviously I would defer to the written briefs in the Williams case that our office has filed. I'm not asking you to argue whether it should be overruled or not. That's not before us. It's already been decided or will be decided by another level. Yes, sir. If the other level were to decide that way, what would we do in this case? We're to decide that, I have to say it correctly, the statute that's at issue in Anderson should be decided the opposite of the way it was decided in Anderson. Your specific question is whether the en banc decision is granted and then they somehow invalidate the aggravated assault statute under Anderson. What would then be the remedy? What would we then do in this case? We'd have to just follow that, right? What would that mean if we followed that? It's such a hypothetical decision I'm asking. I understand. We don't have to have you come back and argue in this case, however likely or unlikely it is that that happens. What's your position? Thank you for clarifying. Hypothetically, if aggravated assault were not to be found a violent felony under the ACCA... We would affirm, right? We would still affirm this case because aggravated robbery and robbery would still be qualifying predicates under the United States sentencing guidelines. I'm sorry. We should not affirm. We should still remand because aggravated robbery and robbery would... I thought you need three. Well, you need two for the United States sentencing guidelines purposes to sentence him to a 24. At a minimum, we'd ask the court to remand him for sentencing purposes since the district court found that he was a 20 and only the aggravated assault qualified under 2K2.1. Here, we're saying the aggravated robbery and the robbery statute would qualify as two predicates under 2K2.1. At a minimum, he was inappropriately sentenced under the guidelines. Again, in this hypothetical world, if aggravated assault is not a qualifying, then you would have to affirm. There would only be the aggravated robbery and robbery qualifying offenses. You would not meet the terms of the ACCA. You would have to affirm then, right? Yes. Just generally have to affirm. You have to go through some analysis to affirm. You would just affirm the judgment, right? That's what, 42 months right now is his sentence? He was sentenced to 42 months. I'm just clarifying that you would affirm as to the ACCA but not the sentencing guidelines. We would still ask to remand the case for appropriate sentencing under 2K2.1 because aggravated robbery and robbery would still count as predicate offenses for sentencing purposes. We would affirm but because the offense level would be affected, we would in fact not affirm but rather remand as well. Correct. Affirm as to the ACCA. If there were not three predicate offenses, if aggravated assault was not available to us, there would only be two. You would affirm on the ACCA argument but still remand for sentencing under the sentencing guidelines. In that hypothetical, how did the district court err? The district court said no ACCA, correct? Yes, Your Honor. The district court erred in that case because originally the district court only found one qualifying predicate under 2K2.1 as a 20. There would be two then. Correct. Okay. We would still be advocating that aggravated robbery and robbery would meet the definition of the statute under the sentencing guidelines. With two of them, there would be no ACCA but there would be a higher offense level. Correct. Thank you. That's all I have. I may reserve my remaining time for rebuttal. Thank you. Could I ask you a question at the outset before you get started? Yes, sir. You want flat out affirmance, right? That's correct. You want the same relief, you want the same sentence that's been imposed, right? You're not asking for greater relief than what your client has right now, is that correct? That's correct. Really, you can't cross appeal then. You can defend that sentence on the same ground but that's not really a cross appeal, is it? It's a cross appeal if the court were to find that if... If you get what you want, it's an affirmance, it's a flat out affirmance. There's no case in which you're asking for more relief than what you have. So it strikes me, and my colleagues could correct me, it strikes me that that's not a situation where a cross appeal... Just a formal question I'm asking. You can still raise the argument. In fact, it serves to your advantage because you don't even have to fool with whether you filed your cross appeal in time. You really don't need a cross appeal. You're just trying to defend it on what you say might be alternative grounds. Isn't that right? That's correct, and procedurally I understand, Your Honor, and we just wanted to make sure the aggravated assault was properly addressed. May it please the court, Jeff Lazarus, Federal Public Defenders, on behalf of Darryl Moore. The district court properly found Mr. Moore not to be an armed career criminal as he does not have three qualifying predicate offenses. We would first like the court to know that Mr. Moore has completed his custodial sentence and has been released from the Bureau of Prisons. An adverse ruling in this case would require him to go back to prison for 12 years, when he's home now with his fiance and infant son. We just want the court to be aware of those facts. Just like the government, we want to focus our argument on the 8-2 robbery. We believe that this is not a properly qualifying armed career criminal predicate, and we rely most definitely on this court's holding in United States v. Yates. Yates is a very instructive court case written by Your Honor Judge Gilman, and it talks about the idea that under Ohio case law there are these de minimis force acts, such as bumping and nudging and jerking an arm back when you're involved in a purse snatching or some type of a theft, that while it is a violent offense under Ohio case law, it is not a violent felony under the Armed Career Criminal Act. And Ohio's 8-2 robbery is very similar to this, and we cite directly to our cases cited in our brief, specifically on page 26 and 27, in which there are Ohio cases that are very similar to the 8-3 robbery in that they deal with purse snatching cases in which a perpetrator is bumping or nudging or making a shove in an act of resistance, not in an act of force. We're not talking about the Patterson robbery where it's a strong-arm robbery where we're trying to use force or violence in order to take the property. In Ohio, we see this all the time where we have these state robberies where someone is committing an act of theft, such as a shoplifting, and as they're leaving the store or trying to get away, they step on someone's foot, they bump someone, they nudge someone, they flail their arms to try to get away, and they scratch a security guard, for example. These are robberies in Ohio. And the government points to this Mitchell and these Tennessee cases, but this court, under the categorical approach and under precedent, has to look at the Ohio state cases. And these Ohio state cases make clear, just as this court noted in Yates, that these are de minimis acts of force that do not constitute a violent felony. And I also want to point... Isn't the language different in this case from the language in Yates? It is different. And didn't the Yates court kind of distinguish a situation that's closer to this case from its holding? I'm not sure this... I'm not sure Yates said force which poses actual or potential harm to a person would be a crime, would its dictum, but would be a crime of violence. Yates dealt with whether force... I mean, the A3 robbery says that a... which is not what we're dealing with, which is Yates, is that a defendant in the act of committing a theft uses, threatens, or uses the immediate use of force towards another. So that statute has the word force in it, and this court held that that was not violent force under the Armed Criminal Act. Here we have an act of physical harm. The statute refers to physical harm, though, right? Right, physical harm. So if force is not force under Yates... More than what the statute in Yates does. That's what I'm trying to... I'm sorry? I'm trying to figure out what the difference is between the two statutes that... Well, if... ...it'll rely on. And guess what it is, is that one of them has physical harm referred to in there, and in Yates it didn't. The robbery case at issue here, the robbery statute at issue here, deals with causing physical harm to another person, whereas the Yates robbery is force. So if... It's different, and we have to figure out whether the difference makes a difference. Well, if force is not force under Yates, then how can physical harm be force in this case? And what we have to look at, obviously this court has held that Patterson is violent force. But Yates itself said in dictum that if it poses actual or potential harm to a person, it would be a crime of violence, citing Stacey Carter, right? That was simply... Are you referring to Patterson or Yates? Yates. But I could be wrong. I mean, that's what my notes show. Well, what I want to point to is the language this court relied upon in Yates. And Yates, this court cited to cases like Carter and Grant, where it talks about under Ohio law a bump alone is an act of violence. And this court held that that was not sufficient, that that was not enough to constitute violent force under the Armed Career Criminal Act. But these cases cited in my brief show that an A2 robbery can similarly be committed through a bump or a nudge or a minor shove to the victim. These are the same de minimis acts. Now, as this court points out and as you can read by the statute, A2 and A3 robbery are textually different. And they are different statutes, but there is a significant overlap in the type of conduct that is committed. And because there's this overlap, we have the same problem in this statute that we do in the Yates robbery. And specifically at issue is the term physical harm to another person. And if you read the annotations for that definition, the annotations set forth in Ohio Revised Code 2901.01, the annotations cite to the legislative history. And the legislative history says, in the context of criminal law, a precedent trauma is not viewed as a necessary requirement before it can be held that personal harm is caused or threatened, such as when an offender deliberately through other than traumatic means sets out to drive his victim mad or arranges for his victim to contract pneumonia. Now, this is part of the legislative history. And it says that physical harm isn't necessarily a punch or a kick, but it can be these de minimis physical harms, such as a scratch, a nudge, or even further, you have these non-physical acts, such as trying to drive the victim mad. Not even laying a hand upon someone, or trying to contract pneumonia, causing them some sort of a sickness, not a physiological trauma. Now, that is important because Johnson, the Supreme Court holding, makes clear that in order to be a violent felony, there needs to be a specific violent active act towards the victim. So Ohio's definition of physical harm is overbroad and includes these non-physical acts, such as driving a victim mad or causing them to contract some sort of an illness or a disease. This is not what Congress had in mind in passing the Armed Career Criminal Act. And we would request that this Court take note of this legislative history because it sheds light upon what Ohio's, the volume of Ohio's law and just how far the robbery statute can go, that it is not a narrow, strong-arm robbery and does not include these acts. The government cites to the Verweeb case, and I'm not sure I pronounced that right, but that's a case from this Court that deals with, and the government relies on that as being mandatory authority. However, I would caution this Court not to rely on Verweeb because it cites to the federal statute. And the federal statute defines the element as serious bodily harm. Not harm, but serious bodily harm. This is more akin to Ohio's felonious assault statute and should not have any bearing upon physical harm. Ohio differentiates two types of harm. The robbery statute talks about physical harm, but felonious assault, which would be causing serious physical harm, are more akin to this Verweeb case. We believe that the government's reliance upon that is overbroad and doesn't have a bearing upon this specific robbery statute. Your Honor, as to your point about Williams, we understand that Williams is pending en banc, and I'm Williams counsel as well, and we have requested that an en banc petition be granted. We would request that this Court not issue a ruling on the instant case until the Williams en banc petition has been satisfied and that motion has been ruled upon, because we think it could create inconsistent decisions. Will no tomorrow? I'm sorry? Will we know tomorrow? Well, for Mr. Williams and Mr. Moore's sake, I hope so. All I know is that the government has responded. I think they responded on December 18th to our petition for en banc hearing. I'm unaware that a vote has been taken, but we are obviously waiting. We're not in a position to speculate as to when that will happen, but it will happen. Okay. One way or the other. They'll either grant en banc or they won't even grant en banc. And we believe that the argument set forth in Williams is equally applicable to this aggravated assault statute today. It's the same statute, right? It is the same statute, and it presents the same problem. Well, hard to have a different result from Williams. I say it wouldn't make sense for one panel to say the statute is a crime of violence and for another to say that it's not when we have the categorical approach and it's the same statute. That's correct. But, Your Honor, we think that the aggravated assault statute gets into the same problems that we're seeing with this robbery statute, which is that Ohio law is very flawed. That's foreclosed unless en banc is granted. That's correct. And I point that out, Your Honor, to just sort of let the court know that these issues of how Ohio defines these terms, serious physical harm and physical harm, are relevant to all these statutes. And it shows that Ohio's drafting and how Congress interprets the Aramcura Criminal Act are very significant. What exactly are you referring to by way of the legislative history on the Ohio statutes? The legislative history that I read a few moments ago? Yes. Your Honor, the annotations that define physical harm are set forth in Ohio Revised Code 2901.01. And in the annotated statute, it has definitions set forth from the legislative history from 1973 when that statute was passed. Now, I don't believe that I cited this in my brief, and I'm happy to supplement if the court wishes, but we just believe that reliance upon this legislative history is very indicative as to what the Ohio legislature meant in passing this statute and in defining physical harm. And they defined it broadly because that's what they wanted to do. But in defining it broadly, they have allowed nonphysical acts and nonphysical harms to come into the umbrella of this statute. And it makes it broader than what the Johnson and what the Aramcura Criminal Act require. I think we understand your point. I mean, particularly the aggravated assault defines physical harm as including mental harm, right? Well, that's serious physical harm under the aggravated assault statute, the A-1. And you might have a good argument except for we're bound by Anderson and at this point bound by Williams, right? That's correct. But we point this out because this isn't the idea of mental harms and nonphysical acts isn't just narrowed to this physical harm, but we're seeing it throughout Ohio's legislative history, and we're seeing it through various statutes. And we just want the court to understand that there is a mismatch between how Ohio defines their criminal statutes and what Congress requires. And that is why Ohio's statutes are so overbroad and why they don't amount to violent felonies. And there are obviously acts that a person could do that would be violent, but there's also acts that are overbroad and don't qualify. And that is why we believe that the district court properly found Ohio's robbery statute not to be a violent felony and properly found him not to be an Aramcura criminal. Actually, on the actual facts, am I right that the aggravated assault in this case was a jailhouse fight? That's correct. So if we looked at the real facts, clearly it would be a violent assault, I mean physical harm. But I gather you're saying, well, but under the categorical approach we can't look at that. No, that's correct, Your Honor. Mr. Moore was already detained on one of his other predicate offenses, and while in the jail he got into a fight and the other person got hurt and Mr. Moore got charged with aggravated assault. And I believe that it bears noting that all three of the alleged predicates in this case were combined for the purposes of a single plea hearing in which all three cases were resolved and he did one single prison sentence. You're not arguing that as a basis for decision in this case? No, and under this court's precedent, because they were separate acts, they can't properly qualify. We just want the court to know that Mr. Moore has been to prison one time. To label him an armed career criminal and to have him be subject to 15 years because of one prison sentence is just, it's not just. Well, but he did three separate acts. I mean, his stealing of the bicycle was different from the jailhouse assault and different from the second predicate as well. I mean, it was combined for sentencing, but these weren't like a series of acts five minutes apart. That's correct. We believe that the fact that he became an armed career criminal because of one prison term just is inherently mitigating and we ask the court to consider that. And he's not one of these criminals who goes to prison, gets out, goes to prison, gets out, goes to prison. It has a record a mile long. I think Judge Gilman is saying if you're going to look beyond the statutory terms and look beyond the law and try to do justice, it sort of cuts both ways because the categorical approach refers to some crime that he didn't commit or some set of facts that is not his set of facts. Either way, you're making things that are not precisely relevant to the inquiry. Well, that's correct, Your Honor, and that's why we ask. One sort of cuts one way, one sort of cuts the other way, but even so we're not supposed to look at either one. So, I mean, I don't know where that gets us really, to be candid. I understand. We ask this court to affirm the district court's finding that Mr. Moore is not an armed career criminal and affirm the sentence. Thank you. Thank you, counsel. Rebottle. Thank you, Your Honor. I want to just touch quickly on the discussion that Your Honors were having with my opposing counsel about the distinction between the A2 and A3 robbery. The A3 robbery force is defined as any violence, compulsion, or constraint physically exerted by any means upon or against a person or a thing in Yates, which is clearly a lesser standard than the physical harm definition under A2, which is any injury, illness, or other physiological impairment. I think the distinction there that Your Honors were keying in on is the active and purposeful conduct required under A2 as opposed to A3, which has a much more broad definition of what constitutes force. A3 is the Yates? Yes, sir. And the discussion that Mr. Lazarus was having about the de minimis force that is encompassed in A2 I think is inappropriate or ill-cited because the cases that he cited in his brief all, in fact, involves violent physical force, that is, force that's capable of causing a serious physical injury. In Inree C.W. and Inree Bowers, two of the cases that Mr. Lazarus cited in Mr. Moore's brief, a juvenile pushed a victim and shoved a victim into a car. Bowers' juvenile tackled the victim to the ground and stole $20. So the inquiry that Mr. Lazarus was focusing on was the resulting injury behind the force, but that is not in and of itself the only indicator or arbiter of whether violent physical force was used. You have to look at the force behind the resulting injury. And, again, the statute both under the ACCA, under the sentencing guidelines, under Johnson, doesn't require that there be a completed injury. It's simply threats, for example, are allowed. Any type of threatening physical force would be allowed. You know, the purse snatching cases and those things, I think, are outliers under the A2. The A3 statute seems to more incorporate that type of behavior. But to say that, you know, a step on the foot or a jerking of the arm back isn't violent physical force that's capable of causing physical injury, I think, is wrong, frankly, because that is certainly violent force, particularly in the commission of a theft offense. And that's demonstrative in the case law both under Johnson, which said, Johnson 2010, which said that a slap would be enough to constitute violent physical force. And the concurring opinion in Castleman, written by the late Justice Scalia, gives a bunch of definitions about the type of force that would encompass violent physical force, including hitting, slapping, shoving, grabbing, pinching, biting, or hair pulling, which would all be force that would constitute violent physical conduct. So if I just may finish my point very briefly, Your Honor, I see I'm out of time. Very briefly. Your Honors, the district court, the government believes that the district court erred in finding that Moore's base offense level was a 20 because of Anderson and Patterson. So we're asking at a minimum that the court send the case back to the district court for resentencing as a base offense level 24. But really, the crux of the government's argument is that the district court erred for not sentencing Moore as an armed career criminal, and we ask that the case be remanded accordingly. Thank you, counsel. The case will be submitted. Clerk may call the next case.